FILED
United States Court of Appeals
Tenth Circuit

January 23, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GUSTAVO MENA-FLORES,

     Petitioner,

v.

ERIC H. HOLDER, JR., United
States Attorney General,

     Respondent.

Nos. 13-9532, 13-9584 & 13-9605

---

**Petitions for Review from the
Board of Immigration Appeals**

---

Mark R. Barr, Lichter Immigration, Denver, CO, for Petitioner.

Robert Michael Stalzer, United States Department of Justice, Washington,
D.C. (Stuart F. Delery, Assistant Attorney General, Civil Division, Anh-
Thu Mai-Windle, Senior Litigation Counsel, and Julie M. Iversen, Trial
Attorney, Office of Immigration Litigation, Civil Division, United States
Department of Justice, Washington, D.C., on the briefs) for Respondent.

---

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

     The Department of Homeland Security initiated proceedings to

remove Mr. Gustavo Mena Flores from the United States on the ground that

he was in the country illegally.  Mr. Mena Flores conceded removability, but applied to adjust his status to permanent residency based on his marriage to a U.S. citizen.  The immigration judge eventually denied the request, stating that Mr. Mena Flores was ineligible for permanent residency because of a "reasonable belief" that he had participated in drug trafficking.  On appeal the Board of Immigration Appeals affirmed, concluding that the immigration judge had sufficient evidence to find a reason to believe that Mr. Mena Flores had participated in drug trafficking.

Mr. Mena Flores petitioned this court to review the Board's denial of his request for adjustment in status.  While the petition was pending, the Board denied Mr. Mena Flores's subsequent motions to reopen the case and reconsider the denial of his motion to reopen.  Mr. Mena Flores then filed petitions seeking review of these denials.

We deny Mr. Mena Flores's petitions to review the Board's three orders, which affirmed the denial of his application to adjust his status and denied his requests to reopen the proceedings and to reconsider the refusal to reopen.  The Board of Immigration Appeals did not err when it held that Mr. Mena Flores had failed to

- prove eligibility for an adjustment in status or
- justify reopening or reconsideration.

## I. Removal Proceedings and Request for an Adjustment in Status

Mr. Mena Flores entered the United States unlawfully in 1990. Sixteen years later, the Department of Homeland Security initiated removal proceedings on the ground that he was present in the United States without admission or parole. Mr. Mena Flores admitted that he was removable because he was "undocumented." But, Mr. Mena Flores tried to change this status, seeking permanent residency based on his marriage to a U.S. citizen. If he had succeeded, he would have avoided removal.

The Department of Homeland Security contended that Mr. Mena Flores could not become a permanent resident based on his criminal activity. This contention stemmed from an arrest of Mr. Mena Flores on drug charges.[1] Though Mr. Mena Flores was acquitted, an immigration judge cannot adjust an alien's status if the evidence creates even a "reason to believe" that the applicant participated in drug trafficking. 8 U.S.C. §§ 1182(a)(2)(C)(i), 1255(i)(2)(A). This standard is lower than the "beyond a reasonable doubt" standard, so the acquittal did not guarantee eligibility to become a permanent resident. *See, e.g.*, *Cuevas v. Holder*, 737 F.3d 972, 975 (5th Cir. 2013) (holding "that an alien can be

---

[1] The charges included (1) one count of distribution of a controlled substance, cocaine, (2) one count of distribution of a controlled substance, methamphetamine, (3) one count of conspiracy to distribute a controlled substance, cocaine and methamphetamine, (4) one count of possession of a controlled substance, methamphetamine, and (5) one count of possession of a controlled substance, cocaine. R. (Case No. 13-9532) at 590-92.

3

inadmissible under § 1182(a)(2)(C) even when not convicted of a crime");
*Lopez-Umanzor v. Gonzales*, 405 F.3d 1049, 1053 (9th Cir. 2005) ("Section 1182(a)(2)(C) does not require a conviction, but only a 'reason to believe' that the alien is or has been involved in drug trafficking."); *Garces v. U.S. Att'y Gen.*, 611 F.3d 1337, 1345 (11th Cir. 2010) (stating that § 1182(a)(2)(C) renders an alien inadmissible based on a "reason to believe" standard, which does not require a conviction).

Both parties submitted evidence on the allegations of drug trafficking, relying on some of the records from the state criminal trial. At a hearing, the immigration judge granted Mr. Mena Flores's request for adjustment in status. The immigration judge found that Mr. Mena Flores had shown there was no reason to believe he was a participant in drug trafficking. R. (Case No. 13-9532) at 261-62.

The Department of Homeland Security appealed, urging that the agency had a reason to believe Mr. Mena Flores had trafficked in drugs. The Board of Immigration Appeals remanded to the immigration judge to address all of the evidence.

On remand, the immigration judge denied Mr. Mena Flores's application. On essentially the same record, the judge found that there was reasonable, substantial, and probative evidence creating a reason to believe that Mr. Mena Flores had been involved in drug trafficking. *Id.* at 30. For these findings, the immigration judge relied on

4

- the statements from "[a]t least five witnesses" involved in the drug operation,

- an affidavit by a special agent identifying two other witnesses to Mr. Mena Flores's trafficking activities, and
- a determination that Mr. Mena Flores was not credible because of his demeanor while testifying.

*Id.* at 28-30.

Mr. Mena Flores appealed to the Board of Immigration Appeals, which affirmed and adopted the immigration judge's decision. *Id.* at 3.

## II. Mr. Mena Flores's Administrative Motions for Reopening and Reconsideration

After the Board's decision, Mr. Mena Flores hired new counsel, who moved for the Board to reopen the removal proceedings to consider transcripts from the criminal trial and additional character references. *See* R. (Case No. 13-9605) at 122-23. Mr. Mena Flores argued that his prior attorney had been ineffective by failing to present this evidence earlier. The Board denied the motion to reopen, holding that prior counsel's failure to introduce the evidence did not amount to "egregious circumstances" or result in prejudice. *Id.* at 123.

Following the denial of his motion to reopen, Mr. Mena Flores moved for the Board to reconsider the denial of his motion to reopen, arguing that the Department of Homeland Security had misrepresented critical evidence by splitting one witness's statements, correctly attributing one part and misattributing the other part to another witness. Mr. Mena

5

Flores argues that this error caused the immigration judge to mistakenly believe that there was an additional witness. The Board denied the motion, reasoning that Mr. Mena Flores could not establish prejudice because the misattributed statements were merely "cumulative [of] other consistent and corroborative evidence relied upon by the Immigration Judge." *Id.* at 4.

## III. Denial of Adjustment in Status

When the immigration judge disallowed an adjustment in status, he reasoned that Mr. Mena Flores had not satisfied his burden of proof on eligibility because of the evidence of drug trafficking. The Board of Immigration Appeals dismissed the appeal, and we conclude that this dismissal did not constitute error.

### A. Subject Matter Jurisdiction

This court generally has subject matter jurisdiction to review final orders of removal, such as the order against Mr. Mena Flores. 8 U.S.C. § 1252(a)(1), (5). But, exceptions exist, and the Department of Homeland Security invokes three of them:

1. 8 U.S.C. § 1252(a)(2)(C), which bars review of orders against aliens who are removable because they have participated in drug trafficking;

2. 8 U.S.C. § 1252(a)(2)(B)(i), which bars review of orders involving discretionary relief, including adjustment in status; and

3. 8 U.S.C. § 1252(d)(1), which bars review of unexhausted arguments.

These provisions do not preclude jurisdiction.[2]

### 1.    Criminal Aliens, 8 U.S.C. § 1252(a)(2)(C)

In 8 U.S.C. § 1252(a)(2)(C), federal law precludes jurisdiction to review an order of removal of an alien who "is removable" based on commission of certain crimes, including drug trafficking.  8 U.S.C. § 1252(a)(2)(C).  We must decide if this provision applies when the agency ordered removal based on illegal presence in the country and relied on criminality only to decline an adjustment in status.  We conclude that § 1252(a)(2)(C) does not apply in these circumstances.

The Department of Homeland Security argues that Mr. Mena Flores is removable because the government could have ordered him removed based on drug trafficking.  We disagree with this logic.  The agency did not find Mr. Mena Flores removable for drug trafficking, so application of this jurisdictional bar would require us to make new factual findings.  Because such fact finding would be inappropriate, we hold that § 1252(a)(2)(C) does not preclude jurisdiction in situations like ours, when there is no

---

[2]    The Department of Homeland Security argues that if § 1252 applies, our jurisdiction would be limited to considering constitutional claims. But, we conclude that § 1252 does not foreclose jurisdiction.  Thus, we need not consider the Department's argument that our jurisdiction is limited to constitutional claims.

7

conviction and the alien was not ordered removed for a covered crime (such as drug trafficking).[3]

Section 1252(a)(2)(C) precludes jurisdiction when an alien "is removable" based on participation in drug trafficking. But, the phrase "is removable" can be interpreted in two ways:

1. as requiring a finding by the immigration judge that the alien was removable for drug trafficking, or

2. as capturing all instances in which the agency could have removed the alien for criminal activity, even when no immigration judge had found criminal activity and the alien had not been convicted of a covered crime.

See Calcano-Martinez v. INS, 533 U.S. 348, 350 n.2 (2001) (stating that § 1252(a)(2)(C) "is not without its ambiguities").

Our resolution of this ambiguity determines whether we have jurisdiction. We retain jurisdiction if we adopt the first definition because Mr. Mena Flores was not removed based on drug trafficking. (He was ordered removed based on his "undocumented" status.) We might lack jurisdiction if we adopt the second definition because there is evidence that Mr. Mena Flores trafficked in drugs.[4]

---

[3] Under federal law, an alien is considered inadmissible when convicted of certain crimes. 8 U.S.C. § 1182(a)(2)(A)-(B). Thus, fact-finding may be unnecessary when the alien was convicted of a crime. But, our case does not involve a conviction.

[4] Under the second definition, we would need to decide in the first instance whether the government had proven by clear and convincing evidence that there was a reason to believe the allegations of drug

8

We adopt the first definition based on

- the "strong presumption in favor of judicial review of administrative action,"[5]

- the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien,"[6] and

- definitions of the term "removable" in other sections of the Immigration and Nationality Act.

Applying these factors, we conclude that § 1252(a)(2)(C) does not strip us of jurisdiction.

Because the phrase "is removable" is ambiguous, we find guidance in principles of statutory interpretation. *See Calcano-Martinez v. INS*, 533 U.S. 348, 350 n.2 (2001) (explaining that because § 1252(a)(2)(C) is ambiguous, "[the] background principles of statutory construction and constitutional concerns must be considered"). These principles include a strong presumption favoring judicial review of administration action. *See INS v. St. Cyr*, 533 U.S. 289, 298 (2001) (explaining that the agency had to overcome this presumption by showing that statutes "stripped the courts of jurisdiction to decide the question of law presented by" a habeas corpus application).

---

trafficking. 8 U.S.C. § 1229a(c)(3); 8 C.F.R. § 1240.8(a). We are not making this assessment in the first instance because we adopt the first definition and reject the second.

[5]   *INS v. St. Cyr*, 533 U.S. 289, 298 (2001).

[6]   *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987).

9

As noted above, the phrase "is removable" can be interpreted in two ways. One would apply whenever the court could ultimately deem the alien removable; the other would apply only when the immigration judge found the alien removable for covered crimes. Interpreting the phrase to require a finding by the immigration judge, we adopt a definition that facilitates judicial review of administrative action.

In doing so, we also follow the established principle of construing ambiguities in removal statutes in favor of the alien. *See United States v. Quintana*, 914 F.2d 1409, 1410 (10th Cir. 1990) ("Statutes relating to deportation of aliens are liberally construed in favor of the alien concerned as the deportation penalty can be harsh."). This principle applies here because § 1252(a)(2)(C) contains a lingering ambiguity ("is removable") and relates to removability by governing the appealability of orders of removal.

We interpret "is removable" in favor of aliens by defining it to require that the agency actually removed aliens on the ground of drug trafficking (rather than ineligibility for an adjustment in status because of evidence involving drug trafficking). The statute strips us of jurisdiction to review orders of removal only when an alien is actually removed for trafficking. This interpretation expands aliens' opportunities to seek judicial review. As a result, our interpretation favors aliens.

10

We rely not only on canons of construction, but also on other parts of the Immigration and Nationality Act. To do so, we examine the statute to see how it uses the terms "removal" and "removable."

We start with the section we are interpreting: § 1252(a)(2)(C). This section refers to an alien who "is removable." Elsewhere in the statute, Congress provided that removal proceedings must take place before an immigration judge. 8 U.S.C. § 1229a(a)(1). Under 8 U.S.C. § 1229a, the immigration judge must "decide whether [the] alien is removable." 8 U.S.C. § 1229a(c)(1)(A). "Section 1229a's use of the term 'removable' suggests . . . that a person is not 'removable' on a particular basis unless or until the [immigration judge] determines that he is." *Alvarez-Santos v. INS*, 332 F.3d 1245, 1251 (9th Cir. 2003); *see also Choeum v. INS*, 129 F.3d 29, 38 (1st Cir. 1997) (concluding that a statute—stripping courts of jurisdiction "'by reason of [an alien] having committed' certain types of criminal offenses"—applies only to "aliens who have actually been adjudged deportable" for the specified crimes). Therefore, the phrase "is removable" can be satisfied only when an immigration judge concludes that the alien is removable for committing a covered crime.

The government relies on *Shepherd v. Holder*, 678 F.3d 1171 (10th Cir. 2012), arguing that we lack jurisdiction because of evidence that could have allowed removal of Mr. Mena Flores based on drug trafficking. *Shepherd* involved removal of an individual based on forgery after she had

been convicted of forgery. *See Shepherd*, 678 F.3d at 1175. The immigration judge initially denied removal, concluding that the individual was a citizen under the Child Citizenship Act. *See id.* Subsequently, the government again sought removal, arguing that the alien was removable based on the forgery conviction because she was too old to qualify for citizenship under the Child Citizenship Act. *See id.* at 1175-76. The immigration judge agreed and ordered removal. *See id.* at 1176.

On appeal we determined that we had jurisdiction to consider the threshold jurisdictional question of whether the individual was a citizen, but lacked jurisdiction to determine whether the individual was removable because of her forgery conviction. *Id.* at 1179. For this holding, we quoted *Garcia v. INS*, 237 F.3d 1216 (10th Cir. 2001), where we had said:

> The [statute] divests courts of jurisdiction only if an alien "*is* removable by reason of having committed a criminal offense." 8 U.S.C. § 1252(a)(2)(C) (emphasis added). It does not say that courts lack jurisdiction if the . . . alien is *found* deportable for commission of certain criminal offenses [by the [Immigration Judge/Board of Immigration Appeals]. Thus, the statutory language clearly requires that we determine whether [the triggering statutory] conditions exist before dismissing the appeal.

*Id.* at 1180 (quoting *Garcia v. INS*, 237 F.3d 1216, 1220 (10th Cir. 2001)). We quoted this language only for the proposition that we can consider the jurisdictional facts, not to indicate that we can make new factual findings triggering the jurisdictional bar in § 1252(a)(2)(C). *Id.* There was no need for the court to make a new factual finding on removability for commission

12

of a covered crime; the agency had already made that finding. *Id.* at 1176.[7]

Thus, *Shepherd* does not suggest that a court can lose jurisdiction by making new factual findings of criminality.

Because *Shepherd* does not apply, we conclude that we have jurisdiction over the petition. Mr. Mena Flores was not removed for trafficking in drugs; he was removed because he was undocumented and unable to satisfy his burden for an adjustment in status. The evidence of criminality was relevant not to prove Mr. Mena Flores was removable as a criminal, but to rebut his argument that he was eligible for an adjustment in status.

Ultimately, Mr. Mena Flores bore an obligation to dispel any reason to believe the drug trafficking allegation. But, the immigration judge could deny an adjustment in status even if he had not regarded Mr. Mena Flores as a drug trafficker. Because Mr. Mena Flores was removed on noncriminal grounds, we retain jurisdiction notwithstanding § 1252(a)(2)(C). *See Syblis v. Att'y Gen.*, 763 F.3d 348, 351 n.5 (3d Cir. 2014) (stating that § 1252(a)(2)(C) does not bar jurisdiction when the

---

[7] The same was true in *Garcia v. INS*. There, we addressed 8 U.S.C. § 1227(A)(2)(A)(iii), which provides for removal of aliens convicted of aggravated felonies. *Garcia v. INS*, 237 F.3d 1216, 1217 (10th Cir. 2001). There was no question about whether the alien was guilty. The statute authorized removal based on a conviction, and the alien had been convicted of driving under the influence. *Id.* The sole jurisdictional issue was whether the crime involved an aggravated felony. *Id.* at 1221.

13

agency found the alien removable based on the overstay statute rather than his criminal conviction).

**2.    Discretionary Relief, 8 U.S.C. § 1252(a)(2)(B)(i)**

Section 1252(a)(2)(B)(i) strips the federal courts of jurisdiction to review decisions "regarding the granting of [discretionary] relief" under § 1229b.  8 U.S.C. § 1252(a)(2)(B)(i).  Because adjustment in status involves a form of discretionary relief under § 1229b, the Department of Homeland Security argues that we lack jurisdiction.  We disagree.

Even when an alien seeks a discretionary form of relief, the jurisdictional bar in § 1252(a)(2)(B)(i) does not apply to nondiscretionary aspects of that relief.  *Sabido Valdivia v. Gonzales*, 423 F.3d 1144, 1148-49 (10th Cir. 2005).  In evaluating an application for adjustment in status, an immigration judge must make both discretionary and nondiscretionary determinations.  The judge must determine if the alien

- satisfies the eligibility requirements and

- merits the favorable exercise of discretion by the court.

8 U.S.C. 1229a(c)(4)(A).  The second element involves a discretionary determination, but the first one does not.

The immigration judge declined relief based on the first determination, concluding that Mr. Mena Flores could not become a

14

permanent resident because of the evidence of drug trafficking. R. (Case No. 13-9532) at 63-65. With this conclusion, the immigration judge noted that he had not reached the discretionary determination. *Id.* at 65 n.1. Therefore, our review is limited to the nondiscretionary aspects of the immigration judge's determination that Mr. Mena Flores is ineligible for relief. In these circumstances, § 1252(a)(2)(B)(i) does not preclude jurisdiction.

### 3. Exhaustion of Arguments, 8 U.S.C. § 1252(d)(1)

We can review an order of removal only if the alien has exhausted available administrative remedies. 8 U.S.C. § 1252(d)(1). The government argues that Mr. Mena Flores makes two unexhausted arguments on appeal:

1.  The statements by trafficker-informants were not credible because of internal inconsistencies.

2.  The government misattributed Mr. Kenneth Fuqua's statements to Mr. Gary Smith, making it appear that an additional person had identified Mr. Mena Flores as a part of the drug trafficking organization.

We disagree, concluding that both arguments are exhausted because the Board of Immigration Appeals has addressed these arguments on the merits.

The two arguments were presented in the motions to reopen and reconsider, and the Board rejected both arguments on the merits. R. (Case No. 13-9605) at 4, 25-26, 123, 159-64. "If the [Board of Immigration Appeals] deems an issue sufficiently presented to consider it on the merits,

15

such action by the BIA exhausts the issue as far as the agency is concerned and that is all § 1252(d)(1) requires to confer our jurisdiction." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1120 (10th Cir. 2007).

By submitting both arguments to the Board and obtaining decisions on the merits, Mr. Mena Flores has exhausted his arguments on internal inconsistency and misattribution of statements to Gary Smith. *See Molina v. Holder*, 763 F.3d 1259, 1262-63 (10th Cir. 2014); *cf. Sidabutar*, 503 F.3d at 1122 (stating that two claims were unexhausted because they "should have been brought before the BIA in the first instance through a motion to reconsider or reopen").

**B.    Merits**

The Board denied Mr. Mena Flores's request for adjustment in status, concluding that his participation in drug trafficking made him ineligible to become a permanent resident. On review, we evaluate if the Board's conclusion was supported by substantial evidence. Based on that review, we conclude the agency did not err in denying Mr. Mena Flores's application for an adjustment in status.

**1.    Burden of Proof**

Like any alien applying for relief from removal, Mr. Mena Flores bears the burden to prove his eligibility. 8 U.S.C. § 1229a(c)(4). Thus, Mr. Mena Flores must prove that he is eligible to become a permanent resident.

16

The Department of Homeland Security denies eligibility based on evidence of drug trafficking. To rebut that position,[8] Mr. Mena Flores must prove that there is not a reason to believe that he had participated in drug trafficking. *See* 8 U.S.C. §§ 1182(a)(2)(C), 1229a(c)(2)(A), 1255(i)(2)(A); 8 C.F.R. § 1240.8(d).

## 2.    Standard of Review

The Board determined that the evidence supported a belief that Mr. Mena Flores had participated in drug trafficking. In reviewing the Board's decision, we engage in de novo review of constitutional and other legal questions. *Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007). Factual determinations, including credibility determinations, are reviewed only for substantial evidence. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *see Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004) (holding that credibility determinations are reviewed under the substantial evidence test in the asylum context). Under this standard, we uphold the Board's finding only if the evidence was "reasonable,

---

[8]    After the immigration judge found that Mr. Mena Flores deserved discretionary relief, the Department of Homeland Security appealed to the Board. In deciding that appeal, the Board stated that the burden of proof shifted to the government to establish that there was a reason to believe that Mr. Mena Flores had been involved in drug trafficking. R. (Case No. 13-9584) at 932. That statement conflicts with our precedent, which puts the burden on the alien to prove that a mandatory ground for denial of relief does not apply. *Garcia v. Holder*, 584 F.3d 1288, 1289-90 (10th Cir. 2009).

17

substantial and probative." *Elzour*, 378 F.3d at 1150.[9] Applying this standard, we can reverse the Board's findings of fact only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Although we are reviewing the decision of the Board, we can consult the immigration judge's opinion to the extent that it was relied upon by the Board. *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). In this case, the Board adopted all of the immigration judge's findings, so we will refer to opinions of both the Board and the immigration judge when evaluating the sufficiency of the evidence. R. (Case No. 13-9532) at 3.

### 3. The Evidence of Trafficking

Authorities suspected that Mr. Mena Flores had participated in a drug trafficking organization led by his brother, Santiago. This suspicion led to drug charges against Mr. Mena Flores. Though Mr. Mena Flores was acquitted, the Department of Homeland Security used the trial evidence to prevent Mr. Mena Flores from adjusting his status to permanent residency.

In denying Mr. Mena Flores's request for adjustment in status, the immigration judge and the Board relied on three types of evidence:

---

[9] The requirement of "reasonable, substantial, and probative" evidence applies in two contexts. We define "substantial evidence" as evidence that is "reasonable, substantial, and probative." *Elzour v. Ashcroft*, 378 F.3d at 1150. And, in applying 8 U.S.C. § 1182(a)(2)(C), the Board of Immigration Appeals interprets the phrase "reason to believe" to require proof by "reasonable, substantial, and probative evidence." *Matter of Rico*, 16 I. & N. Dec. 181, 185 (BIA 1977).

1.  witness statements,

2.  an affidavit from a special agent, and

3.  Mr. Mena Flores's testimony.

### a.    The Witness Statements

In police reports and sworn statements, four participants in the drug trafficking organization (Mr. Donald Skinner, Mr. Kenneth Fuqua, Mr. Richard Lee Clark, and Mr. Benito Garcia) said that Mr. Mena Flores had been involved in the drug operation. Mr. Mena Flores questions their credibility based on their criminal records, content of their testimony, and bias resulting from their incentives to provide incriminating information.

The first witness was Mr. Donald Skinner, who identified Mr. Mena Flores from a picture, stating that he was Santiago's "brother and one of his runners." R. (Case No. 13-9532) at 2003 ("I called [Santiago] and tell [sic] him what I needed and [Santiago] called me back telling me that I'm going to meet [Mr. Mena Flores]."). Mr. Skinner testified inconsistently regarding the number[10] and locations[11] of these transactions.

Mr. Skinner was subject to impeachment in three ways:

---

[10]    R. (Case No. 13-9532) at 926 (over 30); *id.* at 929-30 (approximately 24); *id.* at 1034 (at least 20).

[11]    R. (Case No. 13-9532) at 930 (stating that the deals occurred only in public places); *id.* at 2003-04 (stating that he sometimes picked up drugs at Mr. Mena Flores's house).

19

1.  He admitted that his memory was poor because of "a lot of stuff in [his] head."[12]

2.  He had prior arrests for making false reports.[13]

3.  He admitted that he could not distinguish between Mr. Mena Flores and one of his brothers (Martin), who was also involved in drug activity.[14]

The second witness was Mr. Kenneth Fuqua, who identified Mr. Mena Flores as one of Santiago's brothers involved in the drug business. *Id.* at 1051 (Incident Rep., Dec. 16, 2005), 2234 (Statement of Kenneth Fuqua, Feb. 7, 2006). Mr. Fuqua could not provide details about dates or the amount of drugs provided by Mr. Mena Flores. *Id.* at 2260-67.

The third witness was Mr. Richard Lee Clark. When shown a picture of Mr. Mena Flores, Mr. Clark said that he recognized the individual from a drug transaction. *Id.* at 394 (Incident Rep., Dec. 7, 2005). This account had two problems:

1.  Mr. Clark said the individual's name was "Chico," and Mr. Mena Flores's nickname was "Tavo."[15]

2.  Mr. Clark elsewhere confused Mr. Mena Flores with one of his brothers (Martin).[16]

---

[12]    R. (Case No. 13-9532) at 2086; *see also id.* at 2073 (stating that he had "a lot in [his] head").

[13]    R. (Case No. 13-9532) at 1176.

[14]    R. (Case No. 13-9532) at 2012.

[15]    R. (Case No. 13-9532) at 394.

[16]    R. (Case No. 13-9532) at 2353-55.

20

The fourth witness was Mr. Benito Garcia, who said that Mr. Mena Flores had been the "main person" helping Santiago. *Id.* at 4340 (Incident Rep., March 25, 2007). But, Mr. Garcia admitted that he had never conducted any deliveries with Mr. Mena Flores or seen him at any deliveries. *Id.*

**b.    Special Agent McVey's Affidavit**

Special Agent Jeffrey McVey submitted an affidavit stating that two more participants in the drug operation had identified Mr. Mena Flores: Ms. Kyla Weisberg and Ms. Lucinda Allen.

According to the affidavit, Ms. Weisberg said "that she had gone with [Mr. Skinner] to pick up [drugs] from [Santiago] Mena Flores and his brothers." *Id.* at 1325. But, in a related interview, Ms. Weisberg acknowledged that she "did not know the brothers['] names" and that she believed that the men were Santiago's brothers because Mr. Skinner had told her they were. *Id.* at 942. Ms. Weisberg was also unable to identify Mr. Mena Flores when shown his picture. *Id.*

In the affidavit, Special Agent McVey also referred to a statement by Ms. Lucinda Allen. Ms. Allen said that on one occasion, she had "met [with Santiago Mena Flores] at his brother's residence located at 372 North 18th Ct., Brighton, Colorado." *Id.* at 1326. But, this address was not Mr. Mena Flores's address; it was his brother Martin's. *Id.* at 1033. On a

21

separate occasion, Ms. Allen was unable to identify a photograph of Mr. Mena Flores.  *Id.* at 2551-52.

### c. Mr. Mena Flores's Testimony

Mr. Mena Flores testified, denying any involvement in drug crimes or knowledge of his brother's participation in drug crimes.  The immigration judge found that Mr. Mena Flores was not credible "regarding his lack of knowledge of [sic] brother's criminal activity," finding instead that the evidence against Mr. Mena Flores was "internally consistent and probative." *Id.* at 30. [17]

### 4. Reason to Believe

Mr. Mena Flores could not obtain permanent residency if there was "reason to believe" that he had participated in drug trafficking.  8 U.S.C. § 1182(a)(2)(C).[18]  Thus, we ask:  Did the Board err by concluding that Mr. Mena Flores had failed to disprove a reason to believe he had engaged in

---

[17]   Mr. Mena Flores has not challenged the finding on his own credibility.

[18]   The parties disagree on what this burden entails.  Mr. Mena Flores admits that the evidence need not have proven drug trafficking beyond a reasonable doubt.  But, what would suffice?  The Board of Immigration Appeals has stated that the "reason to believe" standard is met only if the evidence is "reasonable, substantial and probative." *In re El-Abed*, 2006 WL 1558763, at *2 (BIA 2006); *see* note 9, above.  The Department of Homeland Security concedes that the government had reason to believe the drug-trafficking allegations only if the evidence was reasonable, substantial, and probative.  And, as discussed above, our standard of review requires us to decide whether the evidence was reasonable, substantial, and probative. *See* pp. 17-18 & note 9, above.

drug trafficking?  Keeping in mind that Mr. Mena Flores bears the burden of proof for adjustment in status, we conclude the Board did not err.

### a.    Credibility Issues

The immigration judge was entitled to give credence to the testimony of Mr. Skinner, Mr. Fuqua, and Mr. Garcia[19] despite the credibility challenges made by Mr. Mena Flores.

Though Mr. Skinner identified Mr. Mena Flores as a participant in the drug ring, there were credibility issues.  For the agency's determinations on these credibility issues, we apply the abuse-of-discretion standard.  *See Elzour v. Ashcroft*, 378 F.3d 1143, 1150 n. 9 (10th Cir. 2004).  Under this standard, the agency had the discretion to credit Mr. Skinner's testimony.  The agency could have downplayed the inconsistencies in light of Mr. Skinner's consistent testimony that he had met Mr. Mena Flores at least twenty times.  Similarly, the agency could have downplayed the problems in distinguishing Mr. Mena Flores from his brother Martin because Mr. Skinner said that he knew that both Mr. Mena Flores and Martin were active in the drug organization.

The fact-finder could also give weight to Mr. Fuqua's testimony.  Mr. Fuqua remembered seeing Mr. Mena Flores's car and a particular

---

[19]    As discussed above, Mr. Richard Lee Clark also stated that he had recognized Mr. Mena Flores from a drug transaction.  But, Mr. Clark had elsewhere confused Mr. Mena Flores with his brother Martin.  We may assume, for the sake of argument, that Mr. Clark's account added little to the government's proof.  *See* pp. 24-25, below.

23

transaction. Though Mr. Mena Flores attacks Mr. Fuqua's credibility, a rational adjudicator could determine that Mr. Fuqua was credible.

The agency could also have relied on testimony by Mr. Garcia, who identified Mr. Mena Flores as a participant in the organization. Though Mr. Garcia never saw Mr. Mena Flores at a transaction, an adjudicator could rely on hearsay testimony. *N-A-M v. Holder*, 587 F.3d 1052, 1057-58 (10th Cir. 2009) (explaining that the rules of evidence are relaxed in the immigration setting and the judge may rely on hearsay evidence as long as it is "probative and its use is fundamentally fair").

Through the accounts of Mr. Fuqua, Mr. Skinner, and Mr. Garcia, the immigration judge could reasonably find that the evidence supported a finding of ineligibility based on Mr. Mena Flores's criminal activity. *See United States v. Aguayo-Delgado*, 220 F.3d 926, 934-35 (8th Cir. 2000) (holding that the evidence was sufficient to convict beyond a reasonable doubt when the evidence consisted mainly of testimony by other participants in drug transactions, even though there were questions about the reliability and consistency of the accounts).

Mr. Mena Flores points to questions surrounding the government's remaining witnesses. We need not consider these questions because a reasonable adjudicator could have relied on the statements by Mr. Skinner, Mr. Fuqua, and Mr. Garcia to find that Mr. Mena Flores had not satisfied his burden of persuasion. With credibility findings lying in the province

24

of the immigration judge, he could reasonably find that the evidence showed ineligibility for permanent residency because of criminal activity.

### b.    Mr. Mena Flores's Arguments

Mr. Mena Flores makes six arguments in challenging the Board's finding of ineligibility for permanent residency:

1.    The denial of the application to adjust status was a close call.

2.    The evidence tainted by governmental misrepresentations was not reasonable, substantial, or probative.

3.    Law enforcement officers never saw Mr. Mena Flores commit a crime despite months of surveillance.

4.    His personal characteristics were inconsistent with criminal behavior.

5.    Most members of the drug operation were unable to identify Mr. Mena Flores as a participant.

6.    The government's witnesses were unreliable.

His arguments do not affect our conclusion that there was sufficient evidence for a reasonable adjudicator to conclude that Mr. Mena Flores had trafficked in drugs.[20]

---

[20]    Mr. Mena Flores argues that in the absence of a conviction, the Board of Immigration Appeals has upheld findings of inadmissibility only when there were other non-trafficking or controlled substance possession convictions, trafficking-related arrests, admissions to authorities, detection of drugs on the person, or observation by government officials.  In support, Mr. Mena Flores cites a number of cases upholding findings of inadmissibility under these circumstances.  But, Mr. Mena Flores does not cite any cases in which the Board of Immigration Appeals has invalidated a finding of inadmissibility without these kinds of proof.  From Mr. Mena Flores's listing of cases, we might infer that the present case is unique.

### i. Close Call

Mr. Mena Flores asserts that we should consider the closeness of the issue. We assume, for the sake of argument, that the underlying factual issue involves a close call. But, we must uphold the Board's decision if there is sufficient evidence for a reasonable adjudicator to conclude that Mr. Mena Flores was involved in drug trafficking. 8 U.S.C. § 1252(b)(4)(B). Thus, even if we determine that the immigration judge or the Board had inappropriately relied on certain evidence, we must uphold the findings if the remaining evidence would permit a reasonable fact-finder to conclude that Mr. Mena Flores had trafficked in drugs. Because the evidence is sufficient, we reject Mr. Mena Flores's argument.

In evaluating the evidence, we find little guidance from existing case law. The case law involves a spectrum of facts on which circuit courts have affirmed or reversed an agency's finding regarding a reason to believe that an alien had engaged in drug crimes. Mr. Mena Flores does not fall neatly on either side of the spectrum.

On one side of the spectrum, there are cases in which courts have found a "reason to believe" the alien was engaged in criminality. Circuit courts have routinely upheld "reason-to-believe" findings when the alien

- admits to the relevant crime,

---

But, the listing of cases does not help us in deciding how to adjudicate this unique case.

26

- is directly observed with drugs by police, immigration, or government officials, or

- has a conviction for possession of a controlled substance or another nontrafficking offense.

*See, e.g.*, *Fernandez-Bernal v. Att'y Gen.*, 257 F.3d 1304, 1310-11 (11th Cir. 2001) (alien admitted to possessing cocaine, even though the underlying conviction was expunged); *Cuevas v. Holder*, 737 F.3d 972, 973 (5th Cir. 2013) (car search revealed cocaine hidden in the rear panel); *Nunez-Payan v. INS*, 811 F.2d 264, 265-66 (5th Cir. 1987) (pleaded guilty to narcotics charge and received a probationary sentence of 32 months under a deferred adjudication statute); *see also* Appellant's Opening Br. (Case No. 13-9532) at 27-34 (listing cases in which the Board of Immigration Appeals or a court has upheld reason-to-believe findings).

On the other side of the spectrum are cases in which courts have reversed the agency's "reason to believe" findings. These cases involve the Board's reliance on

- the fact that an arrest had been made without analyzing the underlying circumstances, or

- the presence of conclusory police reports that lack any indication of criminality.

*See, e.g.*, *Garces v. Att'y Gen.*, 611 F.3d 1337, 1350 (11th Cir. 2010) (reversing a finding of reason to believe based only on a vacated plea and some hearsay in police reports); *Igwebuike v. Caterisano*, 230 F. App'x

278, 283-85 (4th Cir. 2007) (reversing a finding of reason to believe that had been based solely on insubstantial, non-probative evidence).

Our facts fall somewhere in the middle of this spectrum. Mr. Mena Flores has not admitted trafficking, has never been observed by law enforcement with drugs, and has no criminal record. On the other hand, the evidence against him is stronger than other cases in which a court has reversed the Board's "reason to believe" findings. For example, the evidence here includes the statements of at least three participants in the trafficking organization. On balance, we conclude that the agency could reasonably determine that the facts create a reason to believe criminality despite the absence of circumstances frequently found in other cases. Thus, the agency did not err in concluding that Mr. Mena Flores had failed to meet his burden.

### ii. The Government's Erroneous Statement

Mr. Mena Flores argues that the agency's decision is tainted by a governmental misrepresentation. In its evidence, the Department of Homeland Security mistakenly attributed part of Mr. Fuqua's account to Mr. Gary Smith. Based on this mistake, it appeared that Mr. Smith had implicated Mr. Mena Flores when Mr. Smith had not.[21] Mr. Mena Flores

---

[21] The Department of Homeland Security notified the immigration judge of the mistake, but the judge still relied on the error. *See* R. (Case No. 13-9605) at 1219.

argues this error is significant because of Mr. Smith's role in the drug trafficking organization.

The Board addresses this argument in Mr. Mena Flores's subsequent motion to reconsider, concluding that the error was harmless because the evidence was cumulative. *See* pp. 39, 41, below. We agree with the Board's conclusion expressed in its denial of the motion to reconsider. As we have stated, the remaining evidence permits the conclusion that Mr. Mena Flores trafficked in drugs. Therefore, this mistake does not require reversal of the Board's denial of Mr. Mena Flores's request for an adjustment in status.

### iii.    No Eyewitness Testimony by Law Enforcement Officers

Mr. Mena Flores points out that no law enforcement officer ever saw him commit a crime despite months of surveillance. But, eyewitness testimony by law enforcement officers is not necessary to preclude eligibility for an adjustment in status. *See* 8 U.S.C. § 1182(a)(2)(C) (requiring only a "reason to believe"). The evidence need only be reasonable, substantial, and probative for the Board to have a reason to believe that Mr. Mena Flores was involved in drug-trafficking. *See Matter of Rico*, 16 I. & N. Dec. 181, 185 (1977) (requiring reasonable, substantial,

and probative evidence when the burden was on the government).  Because that evidence exists, we reject Mr. Mena Flores's argument.[22]

### iv.  Personal Characteristics

Mr. Mena Flores emphasizes that the circumstances of his personal life do not suggest criminality:  He has no prior criminal record, did not have multiple telephone numbers, and kept a steady job.

But, a reasonable adjudicator could find criminality notwithstanding this evidence.  Our question is whether the evidence supports the agency's determination that Mr. Mena Flores is ineligible for an adjustment in status based on involvement in drug-trafficking.  The commendable aspects of his personal life do not preclude an agency from finding that Mr. Mena Flores failed to satisfy his burden of persuasion on the evidence of drug trafficking.

### v.  Not Identified by Most Members of the Drug Operation

Mr. Mena Flores notes that most members of the drug operation did not identify him as a participant.  But, some did, and their testimony provides sufficient evidence for the immigration judge to conclude that Mr. Mena Flores is not eligible to become a permanent resident.

---

[22]  Mr. Mena Flores argues that despite the lengthy investigation, he was referenced in only a single set of surveillance notes and less than 0.02% of all calls.  This argument bears on credibility of the witnesses linking Mr. Mena Flores to the drug ring.  But, as discussed above, the agency could credit the witness testimony despite the infrequent references to Mr. Mena Flores.

### vi. Unreliability of Witnesses

Mr. Mena Flores also argues that the government's witnesses are unreliable. By relying on the witnesses, the immigration judge implicitly found that the testimony of the governmental witnesses was reliable. *See United States v. Toro-Pelaez,* 107 F.3d 819, 825 (recognizing the district court's implicit "resolution of credibility issues").

We have already addressed the reliability of the statements made by Mr. Fuqua, Mr. Skinner, and Mr. Garcia. For the sake of argument, we can assume that solid reasons exist to question the credibility of the three men. Despite these credibility issues, a reasonable fact-finder could rely on the witnesses' statements. As a result, these statements require us to uphold the Board's determination.

### 5. Summary

In summary, substantial evidence supports the Board's determination that Mr. Mena Flores was inadmissible based on involvement in a drug-trafficking crime.

## IV. Review of the Motion to Reopen and Reconsider

We deny the petitions on the Board's decisions to deny reopening and reconsideration.

### A. Jurisdiction

We have subject matter jurisdiction to review the Board's denial of Mr. Mena Flores's motion to reopen and reconsider because both are final

orders. *Infanzon v. Ashcroft*, 386 F.3d 1359, 1361-62 (10th Cir. 2004); *see also Khan v. Gonzales*, 495 F.3d 31, 36 (2d Cir. 2007) (reviewing a motion to reconsider).[23]

## B. Motion to Reopen

Through a motion to reopen, an alien can request the Board to reopen his appeal in light of newly available evidence. Typically, "[a] motion to reopen seeks to present evidence that 'is material and was not available and could not have been discovered or presented at the former hearing.'" *Mahamat v. Gonzales*, 430 F.3d 1281, 1283 n.3 (10th Cir. 2005) (quoting 8 C.F.R. § 1003.2(c)(1)). But, an alien can also base a motion to reopen on available documents that had not been submitted because of counsel's ineffectiveness. *See Akinwunmi v. INS*, 194 F.3d 1340, 1341 & n.2 (10th Cir. 1999) (per curiam).

Mr. Mena Flores bases his motion to reopen on evidence that was not presented because of ineffective representation. The Board denied the motion to reopen, and we conclude that the decision fell within the Board's discretion.

---

[23] The Department of Homeland Security argues that we lack subject matter jurisdiction over these motions because we lack jurisdiction over the petition addressing adjustment in status. But, as discussed above, we conclude we have jurisdiction over the agency's decision to deny an adjustment in status. Because we conclude that we have jurisdiction over the petition addressing adjustment in status, we need not address the Department's related jurisdictional challenge to the petitions involving reopening and reconsideration.

### 1. Burden to Show Ineffective Representation

The Board of Immigration Appeals could reopen the proceedings only if Mr. Mena Flores showed that counsel was ineffective and the circumstances were egregious. *Matter of Lozada*, 19 I. & N. Dec. 637, 638-39 (BIA 1988), *overruled*, *Matter of Compean*, 24 I. & N. Dec. 710 (BIA 2009), *vacated*, 25 I. & N. Dec. 1 (BIA 2009). The legal representation was ineffective only if the attorney's deficiencies were so prejudicial that the proceedings became fundamentally unfair. *Akinwunmi*, 194 F.3d at 1341 n.2.

### 2. Abuse of Discretion

In rejecting Mr. Mena Flores's claim of ineffective representation, we consider whether the agency abused its discretion. *Pineda v. Gonzales*, 427 F.3d 833, 838 (10th Cir. 2003). The agency abused its discretion if it failed to give a rational explanation, inexplicably deviated from past policies, failed to supply any reasoning, or rested on summary or conclusory statements. *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004).

### 3. Mr. Mena Flores's Arguments

Mr. Mena Flores urges an abuse of discretion based on four aspects of the Board's decision:

1. summary dismissal of the argument involving the omission of part of the criminal trial transcripts,

2.    failure to explain why Mr. Mena Flores's character references could not rebut specific evidence considered by the immigration judge,

3.    a misstatement regarding the number of witnesses identifying Mr. Mena Flores as a participant in the drug trafficking organization, and

4.    failure to address Mr. Mena Flores's contention that the particular circumstances should lessen his burden of proving actual prejudice.

Under the abuse-of-the-discretion standard, our inquiry is whether the Board provided a rational explanation or rested on conclusory statements. We conclude the explanation was rational.

### a.    Trial Transcripts

Mr. Mena Flores bears the burden to prove that

- his counsel's failure to introduce the trial transcripts rendered the legal representation ineffective, and

- the ineffectiveness caused enough prejudice to make the proceedings fundamentally unfair.

*Tang v. Ashcroft*, 354 F.3d 1192, 1196 (10th Cir. 2003).  The ineffectiveness prong requires "egregious circumstances,"[24] and the prejudice prong requires a "reasonable likelihood" that the outcome would have been different but for counsel's deficient performance.[25]

---

[24]    *Osei v. INS*, 305 F.3d 1205, 1208 (10th Cir. 2002) (quoting *Stroe v. INS*, 256 F.3d 498, 501 (7th Cir. 2001)).

[25]    *United States v. Aguirre-Tello*, 353 F.3d 1199, 1208-09 (10th Cir. 2004).

The Board concluded that it was not egregious for Mr. Mena Flores's prior counsel to withhold the trial transcripts. Because the transcripts include evidence damaging to Mr. Mena Flores, the Board determined that Mr. Mena Flores's prior counsel probably made a strategic decision on which parts to offer. An attorney's objectively reasonable tactical decisions do not qualify as ineffective assistance. *Hooper v. Mullin*, 314 F.3d 1162, 1169-70 (10th Cir. 2002). So, the Board determined that Mr. Mena Flores's attorney was not ineffective by failing to submit the transcripts.

Mr. Mena Flores argues that the Board abused its discretion, claiming that his attorney could not have made a strategic decision because he had not even read the transcripts. But, Mr. Mena Flores provides no evidence that the attorney failed to read the transcripts.

In addition to concluding that Mr. Mena Flores's attorney did not fail to provide effective representation, the Board concluded that the failure to submit the transcripts was not prejudicial. Mr. Mena Flores claims the Board failed to analyze how the transcripts could have damaged the credibility of the government's witnesses. For example, Mr. Mena Flores's trial counsel testified that

- jurors stated after the trial that they had not believed the prosecution's witnesses because they testified inconsistently and had strong reasons to lie,

35

- some witnesses had provided substantial help to the prosecution and agreed to cooperate in exchange for reductions in their sentences,

- an employer had testified that Mr. Mena Flores was a good employee,

- Mr. Mena Flores's brother (Santiago) had admittedly made the telephone calls from Mr. Mena Flores's telephone, and

- none of the surveillance showed activity by Mr. Mena Flores.

R. (Case No. 13-9605) at 1224-30, 1233.

Mr. Mena Flores overstates the significance of the trial transcripts. The Board and the immigration judge already knew about the prosecution's difficulty in obtaining the conviction and the impeachment of the government's witnesses.

The transcripts contain at least some information that could have proven damaging to Mr. Mena Flores. At the criminal trial, the prosecution presented testimony by Mr. Skinner and Mr. Fuqua. After hearing their testimony on direct examination and cross examination, Mr. Mena Flores's attorney moved for a judgment of acquittal. R. (Case No. 13-9605) at 706-07. The trial judge denied the motion, concluding that "a reasonable juror could conclude that Mr. Mena Flores [was] guilty." *Id.* at 708.

In the removal proceedings, the agency had not only the accounts by Mr. Skinner and Mr. Fuqua, but also the account of Mr. Benito Garcia. Unlike the district court, the agency did not have to decide whether

36

someone could find beyond a reasonable doubt that Mr. Mena Flores was guilty of distribution of a controlled substance, conspiracy, or possession of a controlled substance. The question before the agency was merely whether there was "reason to believe" Mr. Mena Flores had trafficked in drugs.

The full transcripts might have allowed the agency to rely on the trial judge's assessment of the evidence. After hearing that evidence, the trial judge stated that a reasonable jury could conclude beyond a reasonable doubt that Mr. Mena Flores had committed the crimes. And, he drew that conclusion with less evidence than the immigration judge had. Under these circumstances, a full copy of the trial transcript might have strengthened the immigration judge's resolve to find a "reason to believe" that Mr. Mena Flores was a drug trafficker.

The Board's decision was supported by a clear rationale, did not depart from established policies, and applied a correct interpretation of the law. Thus, we hold that the Board did not abuse its discretion in declining to reopen the proceedings based on counsel's alleged failure to use the full trial transcript.

### b. Character References

Mr. Mena Flores claims that his attorney acted egregiously in failing to present letters attesting to good character. In his brief to the Board, Mr. Mena Flores claimed that the statements of his friends, family, and co-

workers would have rebutted the statements of the adverse witnesses. The desired letters would have depicted Mr. Mena Flores as an honest, hardworking man, whose family is his first priority.

The Board dedicated less than one sentence to the letters. But, in that sentence, the Board concluded that the character references failed to rebut the information considered by the immigration judge. The brevity of this explanation does not establish an abuse of discretion. *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004).

The Board could reasonably conclude that the character evidence did not rebut the evidence relied on by the immigration judge.[26] As a result, the attorney's failure to present character evidence did not require the Board to grant the motion to reopen.

### c.    Statement of Gary Smith

As discussed previously, the Department of Homeland Security misattributed a statement made by Mr. Fuqua to both Mr. Fuqua and Mr. Smith. This error suggested that five witnesses had implicated Mr. Mena

---

[26]    Mr. Mena Flores argues that the evidence relied on by the immigration judge was just as general as the evidence of good character. We may assume, for the sake of argument, that he is correct. Nonetheless, the Board of Immigration Appeals could reasonably conclude that the character references did not rebut the evidence relied on by the immigration judge.

Flores when only four witnesses had done so.[27]  In ruling on Mr. Mena

Flores's motion to reopen, the Board stated:  "There were at least five

informants or witnesses who stated that [Mr. Mena Flores] served as a

'runner' for [Santiago], and the statements were consistent and

corroborative."  R. (Case No. 13-9605) at 123.  Mr. Mena Flores argues

that the Board's factual mistake entails an abuse of discretion.  We

disagree.

When Mr. Mena Flores subsequently asked the Board to reconsider

its denial of the motion to reopen, he also argued that the Board's factual

mistake was fatal.  In denying the motion to reconsider, the Board

determined that the mistake was harmless because the erroneous evidence

was cumulative of other evidence.  R. (Case No. 13-9605) at 4.

The Board was ideally suited to say how it would have decided if it

had known there were only four witnesses rather than five.  After all, the

Board would have known how it would have ruled with the correct

information.  Thus, the Board had the discretion to decline to reopen the

proceedings based on its earlier mistake.

---

[27]    Mr. Mena Flores also argues that Mr. Garcia never saw any alleged
acts of criminality by Mr. Mena Flores.  But, as will be discussed below,
the Board did not say there were four eye-witnesses; the Board merely said
that there were four witnesses implicating Mr. Mena Flores in drug crimes.

### d. Unaddressed Evidentiary Burden

In his motion to reopen, Mr. Mena Flores argued his case should be reopened even if he disputed only a few pieces of evidence relied on by the immigration judge. He explained that his case contained less direct evidence than others in which the Board had sustained "reason to believe" findings. The Board did not address this argument, and Mr. Mena Flores claims that the Board had a duty to explain why the typical evidentiary burden would apply.

We disagree. The Board's obligation is to "'consider the issues raised . . . and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.'" *Becerra-Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987) (quoting *Osuchukwu v. INS*, 744 F.3d 1136, 1142-43 (5th Cir. 1984)). This obligation does not require the Board to "'expressly parse or refute on the record' each individual argument . . . offered by the petitioner." *Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006) (quoting *Xian Ji Chen v. Dep't of Justice*, 434 F.3d 144, 160 n.13 (2d Cir. 2006)). Thus, the Board had no obligation to say why the typical standard applied and we decline to reverse the Board's decision on this ground.

### C. Motion to Reconsider

"A motion to reconsider . . . is available to raise errors of fact or law committed by the [Board] in its prior decision." *Mahamat v. Gonzales*, 430

F.3d 1281, 1283 n.3 (10th Cir. 2005); *see* 8 C.F.R. § 1003.2(b)(1).  Mr.

Mena Flores asked the Board to reconsider its denial of his motion to

reconsider, arguing that the Board had affirmed the immigration judge's

findings based in part on a factual error.

The Board relied on the immigration judge's statements that "[t]here

were at least five informants or witnesses" who implicated Mr. Mena

Flores in the trafficking organization.  R. (Case No. 13-9605) at 3.  In fact,

there were only four witnesses.  The Board denied the motion to

reconsider, deciding that the evidence in error "was cumulative to other

consistent and corroborative evidence."  *Id.* at 4; *see* pp. 29, 39, above.

The Board then listed the other evidence, concluding that it was sufficient.

Mr. Mena Flores argues that the Board abused its discretion by

making new factual mistakes and by making impermissible factual

findings.  We conclude that the Board did not abuse its discretion in

denying the motion to reconsider.

## 1.    Factual Errors

In denying the motion to reconsider, the Board made two statements

that Mr. Mena Flores characterizes as inaccurate:

1.    There had been four witnesses to Mr. Mena Flores's
      criminality.

2.    Mr. Richard Clark had identified a picture of Mr. Mena Flores.

41

Mr. Mena Flores argues the first statement constitutes error because there were not four "*eye-witnesses* to his criminality." Appellant's Opening Br. (Case Nos. 13-9584 & 13-9605) at 50 (emphasis added). This argument is based on the fact that Mr. Garcia, one of the witnesses, never saw Mr. Mena Flores participate in trafficking. But, the Board did not say there were four eye-witnesses; it said merely that there were four witnesses implicating Mr. Mena Flores in drug crimes. Mr. Garcia was a witness because he had made statements indicating that he was aware of Mr. Mena Flores's participation in the drug trafficking organization. Thus, there were four witnesses, even if not all of them were eye-witnesses, and the Board did not err in saying there were four witnesses.

In addition, Mr. Mena Flores argues that he was never identified by Mr. Clark. But, Mr. Clark identified Mr. Mena Flores through a photograph as an individual who had been present at a drug transaction. R. (Case No. 13-9532) at 394.

As Mr. Mena Flores argues, Mr. Clark gave the wrong nickname for Mr. Mena Flores. *Id.* But, Mr. Clark's mistake goes to the reliability of the identification; it does not change the fact that Mr. Clark identified Mr. Mena Flores (through a photograph) as someone involved in the drug organization. Thus, the Board's characterization of Mr. Clark's account was accurate.

42

Even if the Board had made factual errors, the record contains sufficient evidence for a reasonable adjudicator to conclude that Mr. Mena Flores participated in drug trafficking. Therefore, the alleged errors would not have compelled the Board to grant the motion to reconsider.

### 2. Impermissible Fact-Finding

Mr. Mena Flores adds that the Board should have granted the motion to reconsider and ordered a remand to the immigration judge once the Board determined that there were not five witnesses. In Mr. Mena Flores's view, the Board's analysis entailed impermissible fact-finding. *See* 8 C.F.R. § 1003.1(d)(3)(iv).

The Board did not err. It merely determined that the remaining facts would have led to the same result even without the mistake over the number of witnesses. Thus, we reject Mr. Mena Flores's argument that the Board engaged in impermissible fact-finding.

We conclude that the Board did not abuse its discretion in denying Mr. Mena Flores's motion to reconsider.

### V. Conclusion

Mr. Mena Flores bears the burden to establish that there was no reason to believe that he had been a drug trafficker and that the Board abused its discretion by denying his motions to reopen and reconsider. He has failed to satisfy his burdens. Thus, we deny the petitions for review.

43