**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 17, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

NAVADO RICARDO BROWN,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 18-9580
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HARTZ**, Circuit Judges.
_____

Navado Ricardo Brown petitions for review of the Board of Immigration

Appeals (BIA) decision affirming an Immigration Judge's (IJ) decision denying his

application for adjustment of status.[1]  Exercising jurisdiction under 8 U.S.C. § 1252,

we deny the petition for review.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The BIA also dismissed Brown's appeal of the IJ's denial of his applications
for asylum, withholding of removal, and protection under the Convention Against

## Background

Brown is a native and citizen of Jamaica who entered the United States in 2013 on a nonimmigrant K–1 fiancé visa, *see* 8 U.S.C. § 1101(a)(15)(K)(i), which authorized him to remain in the country until February 25, 2014. Brown overstayed his visa and in June 2017, he pleaded guilty to felony menacing in Colorado state court. Before his scheduled sentencing hearing, the Department of Homeland Security (DHS) took him into custody and initiated removal proceedings, charging him with removability under 8 U.S.C. § 1227(a)(1)(B) for staying in the country beyond the period authorized by his visa.

At a hearing in October 2017, Brown admitted the allegations regarding his nationality and that he had overstayed his visa without permission, but he alleged that he married his fiancée, a U.S. citizen, before his visa expired and sought to extend it. The IJ continued the removal proceedings to allow the parties to determine whether Brown complied with the terms of his visa. She encouraged him to get a pro bono attorney to help him prove his marriage and resolve other visa-related issues with the United States Citizenship and Immigration Service (USCIS).

At the next hearing, Brown submitted a marriage certificate indicating that he and his U.S. citizen wife had gotten married before his visa expired. Counsel for DHS indicated that it had no record of the marriage and that Brown had not sought either an extension of his visa or adjustment of his status. The IJ continued the

Torture (CAT), but he does not challenge those rulings on appeal. Accordingly, we do not address them.

2

removal proceedings to allow DHS to determine whether Brown had filed the marriage certificate with USCIS and to allow Brown to obtain the information he needed to establish that he complied with the other terms of his visa. Brown said he was having difficulty communicating with his wife and USCIS, and complained that his deportation officer had not provided "information about [his] case." Admin. R. at 131. But the IJ told Brown that gathering the information was not his deportation officer's responsibility and she reminded him that it was his burden to establish that he had complied with the terms of his visa, not DHS's burden to establish that he didn't. The IJ again encouraged Brown to seek pro bono legal assistance.

Brown reported at the next hearing that he had not determined what, if any, documents had been submitted to DHS after he was married, but said his wife told him DHS had denied a waiver she had applied for on his behalf. Counsel for DHS had no record of a waiver application but suggested that Brown could seek an adjustment of status. *Id*. at 137. The IJ reiterated that it was Brown's responsibility to prove that he complied with the visa and to take the steps necessary to seek an adjustment of status, and when she asked him what efforts he had made to do so, he indicated that he was trying to "come up with the paperwork and stuff" but was having difficulty because his wife, who lived in another state, had recently had surgery and because "you guys . . . never told me directly what type of paperwork . . . to present." *Id*. at 139. The IJ explained that she was not Brown's attorney and noted that despite her repeated suggestions that he seek pro bono legal assistance, he had failed to do so. She expressed concern that Brown did not "seem to be making a

3

lot of effort . . . to find these documents," continued the hearing a third time to give him "one more opportunity to do so," and provided him with an application for adjustment of status. *Id.* at 141.

At the next hearing in November 2017, Brown appeared without documentation proving he complied with the terms of his visa. He submitted his application for adjustment of status, however, and the IJ continued the hearing to allow him to gather the materials he needed to complete his application. She explained that Brown was required to have a medical examination and that he was "responsible for coordinating the medical exam" and working with officials at his detention facility to schedule transportation. *Id*. at 156. She advised him to review the instructions on the application to ensure that he complied with the requirements for an adjustment of status, emphasizing that she could not consider his application if he did not have a medical examination or it was otherwise incomplete. When Brown expressed frustration that his detention officer was not helping him with the process, the IJ reiterated that it was not the officer's responsibility to do so and recommended several times, as she had at each of the previous hearings, that Brown seek help from pro bono legal services. The IJ then continued the removal proceedings a fourth time and stressed the importance of Brown bringing a completed application, including proof of a medical examination, to the next hearing.

Brown appeared at the next hearing without having had the required medical examination and blamed his detention officer for his failure to complete his adjustment application. The IJ repeated her earlier admonitions that it was Brown's

4

responsibility, not DHS's, to find a medical professional and schedule the exam. She then continued the proceedings again and told Brown:

> I'll give you another opportunity to get that done but I can't keep continuing your case if you're not going to take any action for yourself in this case. At some point, I will deem [the adjustment application] abandoned and you'll be removed. . . . [Y]ou're going to have to take some steps for yourself to get the medical exam done. . . .

*Id*. at 162. The IJ acknowledged that the process was complicated and that Brown's detention made it even more difficult, and she again recommended that he seek pro bono legal assistance. But she noted that Brown had chosen to continue to represent himself and told him that having made that choice, it was his "responsibility to get it done." *Id*. at 166.

At the next hearing in January 2018, Brown reported that he had not completed the medical examination and, because his adjustment application was incomplete, the IJ reset the matter for a final hearing on his asylum application. She told Brown she would consider his adjustment application at that hearing if he could prove he had had a medical examination. But she reiterated that she could not adjudicate the application if it was incomplete and told him that if he did not have a medical examination before the next hearing, she would deem the application abandoned.

At the next hearing in February 2018, Brown reported that he had not had a medical examination. When the IJ asked what steps he had taken to schedule an appointment, he said he had tried unsuccessfully to contact his wife and had asked his deportation officer to transfer him to a facility where he could use the phone more

5

frequently.  The IJ indicated that she was willing to continue the proceedings "one more time" to allow Brown to have the exam and complete his adjustment application, *id.* at 177, and she gave him a document printed from the USCIS website explaining the medical examination process and a list of thirty nearby doctors authorized to perform them.  After Brown testified in support of his asylum application, the IJ continued the proceedings for a decision on the asylum application and for consideration of his adjustment application.

The final hearing was in May 2018—seven months after the initial hearing and six months after the IJ first explained the medical examination requirement.  Brown indicated that he had still not had a medical examination because the doctors had not returned his and his family members' calls.

The IJ issued a written decision denying all relief.  With respect to Brown's adjustment application, she found him ineligible for adjustment of status because he failed to complete his medical evaluation and submit Form I-693, Report of Medical Examination and Vaccination Record.  *Id.* at 97.  Brown appealed to the BIA, challenging the IJ's determination that he made insufficient efforts to get a medical examination and complete the required paperwork, and claiming, without explanation, that the denial of his application violated his right to due process.

The BIA affirmed the IJ's ruling and dismissed his appeal, agreeing with the IJ's determination that Brown's failure to obtain a medical examination rendered him ineligible for an adjustment in status.  The BIA acknowledged Brown's argument that he was unable to have a medical exam because of his detention and other logistical

challenges.  But the BIA noted that despite the IJ having given Brown the information he needed to complete the medical examination requirement and having continued the proceedings multiple times to allow him to either schedule an appointment himself or get pro bono legal assistance to help him schedule one, he failed to articulate "any efforts or arrangements he may have made toward compliance with the medical examination requirement." *Id*. at 3.  The BIA also concluded that the record did not support Brown's "general and lacking in specificity allegation that his due process rights have been violated." *Id*. at 5.

## Discussion

Brown claims the BIA violated his right to due process by finding him ineligible for an adjustment of status based on his failure to comply with the medical examination requirement.

### 1.  Jurisdiction

As a threshold matter, we note that although we do not have jurisdiction to review the agency's ultimate determination whether to grant an adjustment of status to an alien who is statutorily eligible for it, *see* 8 U.S.C. § 1252(a)(2)(B)(i), we do have jurisdiction to consider "constitutional claims or questions of law," § 1252(a)(2)(D), and final orders of removal, § 1252(a)(1).  Accordingly, we have jurisdiction to consider Brown's claim that the BIA violated his right to due process by finding him ineligible for an adjustment of status and ordering him removed. *See Herrera-Castillo v. Holder*, 573 F.3d 1004, 1006, 1010 (10th Cir. 2009) (recognizing that court lacks jurisdiction under § 1252(a)(2)(B) to review an agency's

7

discretionary determinations but exercising jurisdiction under § 1252(a)(2)(D) to review alien's equal protection challenge to BIA's determination that he was ineligible for an adjustment of status).

## 2. Requirements for Adjustment of Status and Standard of Review

The Attorney General may, in his discretion, adjust an alien's status to that of a lawful permanent resident, including based on the alien's marriage to a U.S. citizen, if the alien demonstrates that: (1) he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (2) a visa is immediately available to him. *See* 8 U.S.C. § 1255(c), (i)(1)(A)(ii), (i)(2); *Padilla-Caldera v. Holder*, 637 F.3d 1140, 1148 (10th Cir. 2011). One of the requirements for satisfying the eligibility requirement is establishing that the applicant is not inadmissible on public health grounds, which requires having a medical examination and submitting a Form I-693 reporting the results of the medical examination to USCIS. *See* 42 U.S.C. § 252 (authorizing promulgation of regulations regarding medical examinations of aliens); 8 C.F.R. § 245.5 ("[A]n applicant for adjustment of status shall be required to have a medical examination by a designated civil surgeon . . . ."); 42 C.F.R § 34.1(d) (providing that requirements regarding medical examinations apply to applicants for adjustment of status); *Carpio v. Holder*, 592 F.3d 1091, 1093 (10th Cir. 2010) (explaining that aliens seeking to obtain adjustment of status to that of a lawful permanent resident "must proceed through a detailed procedure involving" numerous steps and must "file various documents establishing their eligibility for the visas and submit to a medical examination"); *see*

8

*also* 42 C.F.R § 34.3 (establishing scope of medical examinations), § 34.4 (requiring medical examiners to issue medical notification of their findings), § 34.2(l) (defining medical notification).

The applicant bears the burden of establishing eligibility for adjustment of status and demonstrating that he merits a favorable exercise of discretion. 8 U.S.C. § 1229a(c)(4)(A); *Mena-Flores v. Holder*, 776 F.3d 1152, 1161–62 (10th Cir. 2015); *Matter of Rainford*, 20 I. & N. Dec. 598, 599 (BIA 1992). To meet that burden, the applicant "must comply with the applicable requirements to submit information or documentation" supporting his application. 8 U.S.C. § 1229a(c)(4)(B). The IJ determines whether the applicant's testimony is credible and persuasive and whether he has satisfied his burden of proof. *Id*. The IJ may require the applicant to provide corroborating evidence unless he demonstrates that he "does not have the evidence and cannot reasonably obtain the evidence." *Id*.

Here, a single member of the BIA affirmed the IJ's decision in a brief order. *See* 8 C.F.R. § 1003.1(e)(5). Under these circumstances, we review the BIA's opinion rather than the decision of the IJ, but we may also consult the IJ's "more complete explanation" of the grounds for the Board's decision. *Neri-Garcia v. Holder*, 696 F.3d 1003, 1008–09 (10th Cir. 2012) (internal quotation marks omitted).

We review the BIA's legal conclusions, including on constitutional questions, de novo and its factual findings for substantial evidence. *Mena-Flores*, 776 F.3d at 1162. Under the substantial evidence standard, "our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence

9

considering the record as a whole." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (alterations and internal quotation marks omitted). The agency's findings of fact "are conclusive" unless the record, considered as a whole, "demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012) (internal quotation marks omitted); *see also Sidabutar v. Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007) (explaining that "[i]t is not our prerogative to reweigh the evidence, but only to decide if substantial evidence supports the agency's decision" (internal quotation marks omitted)). Our review is limited to the agency record. 8 U.S.C. § 1252(b)(4)(A).

### 3. Analysis of Brown's Due Process Claims

Brown claims the denial of his adjustment application violated his right to due process because (1) he was "denied his right to an unbiased fact finder," Opening Br. at 3; and (2) the IJ "did not consider that the [sic] he was detained and a Pro Se litigant who has little resources while detained," *id*. at 5. We disagree.

"Because aliens do not have constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (internal quotation marks omitted). To prevail on his due process claim, Brown must establish "both that he was deprived of due process and that that deprivation prejudiced him."

10

*Lucio-Rayos v. Sessions*, 875 F.3d 573, 576 (10th Cir. 2017), *cert. denied,* 139 S. Ct. 865 (2019).

The right to a removal hearing that comports with due process includes the right to "a fair and impartial decision-maker." *Id*. An IJ must recuse herself if she (1) has a personal bias "stemming from an extrajudicial source which resulted in an opinion on the merits on some basis other than what [she] learned from her participation in the case"; (2) her judicial conduct demonstrates "such pervasive bias and prejudice" that it amounts to "bias against [the] party"; or (3) she has "an inherent bias." *Id*. (brackets and internal quotation marks omitted).

Brown cites no facts or law supporting his conclusory claim that the IJ was biased, and our independent review of the record reveals no evidence that the IJ denied Brown's application based on extrajudicial influences or that she was biased against him. Nor does the record support Brown's claim that the IJ violated his right to due process by failing to consider the difficulties his detention, pro se status, and limited resources presented in completing the required medical examination.

The IJ complied with regulatory requirements by advising Brown of his right to obtain counsel and providing him with a list of pro bono legal services available to him. *See* 8 C.F.R. § 1240.10(a). She repeatedly recognized the challenges Brown's detention presented, cautioned him that choosing to proceed pro se would make navigating the process even more difficult, and encouraged him at each of the eight hearings to obtain pro bono legal assistance. She gave him the information he needed to schedule and complete his medical examination himself if he chose to proceed pro

11

se, and she continued the hearing four times after he submitted his adjustment application to allow him to complete it. When he blamed his inability to obtain a medical examination on the IJ, his detention officer, and his difficulties communicating with his wife, the IJ appropriately reminded him that it was his burden to establish eligibility for adjustment of status and complete the medical examination. And when she asked him multiple times to explain what steps he had taken to do so, he provided no specific examples, giving only vague assurances that he was "trying [his] best," Admin. R. at 139, 173, *see id*. at 141, 176, and saying the unnamed doctors his family members contacted had not responded.

On this record, we conclude that Brown's own failure to obtain a medical examination does not call into question the fundamental fairness of his removal proceedings, and we agree with the BIA's determination that the IJ did not violate his due process rights by finding him ineligible for adjustment of status. In so concluding, we do not consider the new documentation Brown submitted in support of his petition for review. Brown did not present this evidence to the IJ, and we must decide his petition "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A).

## Conclusion

The petition for review is denied.  Brown's motion to proceed on appeal without prepayment of costs and fees is granted.

Entered for the Court


Timothy M. Tymkovich
Chief Judge

13