**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**July 24, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

---

MATHURIN A. ATUD,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 23-9578
(Petition for Review)

---

## ORDER AND JUDGMENT[*]

---

Before **BACHARACH**, **EID**, and **FEDERICO**, Circuit Judges.

---

Mathurin A. Atud petitions for review of a decision of the Board of Immigration Appeals (BIA) denying his motion to reopen removal proceedings based on alleged ineffective assistance of counsel. We conclude the BIA did not adequately explain its denial of that motion. We therefore

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

grant the petition, vacate the BIA's denial, and remand for further proceedings.

## I.    BACKGROUND & PROCEDURAL HISTORY

### A.    Atud's Arrival in the United States

Atud is a native and citizen of Cameroon. In June 2018, he presented himself at the San Ysidro, California, port of entry and requested asylum based on his political opinion. Specifically, he claimed he had participated in a pro-Anglophone demonstration in Cameroon and Cameroonian authorities have since been arresting the participants.

### B.    Immigration Court Proceedings

The government soon brought removal proceedings against Atud, charging him with entering the United States without a valid entry document. Atud conceded removability on that basis and then formally applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). He also retained an attorney to assist him.

Ahead of his asylum hearing before an Immigration Judge (IJ), Atud submitted eight declarations from friends and family in Cameroon. These declarations portrayed Atud as a major force in organizing pro-Anglophone protests in his region of Cameroon, such that he had become recognizable to Cameroonian authorities. The declarations also gave dramatic details

2

about an October 1, 2017, protest in which Atud participated and possibly more than 100 people were killed. At the asylum hearing, however, Atud testified the October 1, 2017, protest was the only protest he had ever joined. Moreover, he testified that the total size of the protest was about 100 people, whom the police dispersed by arresting some and beating others, including him. Atud also gave arguably inconsistent answers about how he managed to get away. As to the differences between his own testimony and the story told in his supporting declarations, he claimed the declarants had been mistaken or there had been a misunderstanding.

Based on the inconsistencies in Atud's testimony and the inconsistencies between his testimony and his supporting declarations, the IJ concluded Atud was not credible. The IJ further found that Atud did not otherwise qualify for asylum, withholding of removal, or CAT protection. The IJ accordingly denied relief and ordered that Atud be removed to Cameroon.

### C.    BIA Proceedings

Atud appealed to the BIA and obtained a new attorney. Through his new counsel, Atud conceded that the IJ's decision was "legally correct based on the information provided to him," R. at 39, but argued that his proceeding must be reopened and remanded to the IJ based on his previous attorney's alleged ineffective assistance and based on new evidence.

Concerning ineffective assistance, Atud argued:

- He is illiterate, but his former attorney apparently never realized this and never realized Atud could not have read the supporting declarations submitted on his behalf.

- A competent attorney would have reviewed those supporting declarations with Atud ahead of time, to verify them.

- His main language is Cameroonian pidgin English, yet his former attorney allowed the asylum hearing to take place entirely in American English, which may have led to misunderstandings.

- His attorney did not recognize that he (Atud) has an intellectual disability.

He argued that if his attorney had understood and handled these matters appropriately, it could have affected the IJ's credibility determination.

Concerning new evidence, Atud submitted the results of tests a psychologist had recently performed showing that Atud possesses very poor nonverbal intelligence. Atud believed this supports a theory that, to mask his disability, he said and did things "to make himself appear more knowledgeable and competent than he actually was," which is a "normal coping strateg[y] of the intellectually disabled—attempting to pass as more intellectually competent than they actually are." R. at 35. Atud presented this evidence as both relevant to his claims and also relevant to his former attorney's ineffectiveness.

In a single-member summary order, the BIA denied Atud's motion to reopen. The BIA first addressed Atud's arguments about his intellectual

abilities, and in that vein, the BIA asked whether anything in the record suggested the IJ should have inquired into his mental competency. In its view, the answer was no: "The transcript demonstrates that the respondent understood the proceedings, was engaged at every hearing, and answered questions appropriately. There is no indication that the respondent could not meaningfully participate in his proceedings. We are not persuaded to remand the record on mental competency grounds." R. at 5 (citation omitted).

As for ineffective assistance, the BIA denied relief with the following explanation:

> Our review of the record . . . does not reflect that the respondent was ill prepared for the merits hearing. New counsel's assertion that the respondent has a limited understanding of English does not explain the discrepancies between the respondent's testimony and his supporting affidavits from his family members regarding the details of his claim. Also, counsel's arguments on appeal are not evidence. The respondent has not demonstrated that [the former attorney] was ineffective in his representation of the respondent or that ineffective assistance of counsel contributed to the Immigration Judge's adverse credibility finding.

R. at 5 (footnote and citation omitted).

This petition for review timely followed. Atud "is only appealing the denial of the Motion to Remand [*i.e.*, the motion to reopen]." Opening Br. at 5.

## II.    LEGAL STANDARD

"Because [removal] proceedings are civil in nature, a claim of ineffective assistance of counsel in a [removal] proceeding may be based only on the Fifth Amendment guarantee of due process." *Akinwunmi v. INS*, 194 F.3d 1340, 1341 n.2 (10th Cir. 1999). "As a result, an alien must show that his counsel's ineffective assistance so prejudiced him that the proceeding was fundamentally unfair." *Id.* "The ineffectiveness prong requires egregious circumstances, and the prejudice prong requires a reasonable likelihood that the outcome would have been different but for counsel's deficient performance." *Mena-Flores v. Holder*, 776 F.3d 1152, 1169 (10th Cir. 2015) (footnote and internal quotation marks omitted).

We review the BIA's decision on this matter for abuse of discretion. *Id.* "The agency abused its discretion if it failed to give a rational explanation, inexplicably deviated from past policies, failed to supply any reasoning, or rested on summary or conclusory statements." *Id.*

## III.    ANALYSIS

To repeat, ineffective assistance in this context requires (i) egregious circumstances and (ii) prejudice, meaning a reasonable likelihood of a different outcome.

The BIA did not explicitly invoke the egregious-circumstances standard. It did say, however, that "[t]he respondent has not demonstrated

6

that [the former attorney] was ineffective in his representation of the respondent." R. at 5. If the former attorney was not ineffective, then naturally the circumstances were not egregious. But the BIA's analysis is no more than a "conclusory statement[]" that "fail[s] to supply any reasoning." *Mena-Flores*, 776 F.3d at 1169.

This alone does not require remand because ineffective assistance requires both egregious circumstances *and* prejudice. If the BIA did not abuse its discretion as to prejudice, this court could affirm on that basis alone. *See Zzyym v. Pompeo*, 958 F.3d 1014, 1033–34 (10th Cir. 2020) ("[W]e can uphold administrative action when an agency gives two independent reasons and only one of them is valid."); *Karki v. Holder*, 715 F.3d 792, 804 (10th Cir. 2013) (concluding that one of the BIA's findings was unsupportable on the record and then examining the BIA's alternative finding on a different element).

Like egregious circumstances, the BIA did not explicitly invoke the prejudice standard. However, the BIA found that Atud had "not demonstrated . . . that ineffective assistance of counsel contributed to the Immigration Judge's adverse credibility finding," R. at 5, which appears to be a finding of no prejudice. As far as potential support for that finding, the BIA seems to have relied on the following:

- "Our review of the record . . . does not reflect that the respondent was ill prepared for the merits hearing."

- "New counsel's assertion that the respondent has a limited understanding of English does not explain the discrepancies between the respondent's testimony and his supporting affidavits from his family members regarding the details of his claim. Also, counsel's arguments on appeal are not evidence."

*Id.* (footnote omitted).[1]

We will begin with the statement that "counsel's arguments on appeal are not evidence." We believe this refers to the beginning of the preceding sentence, *i.e.*, to "[n]ew counsel's assertion that the respondent has a limited understanding of English." Here, however, Atud's motion to reopen included a psychologist's report claiming to demonstrate his limited nonverbal intelligence. It also included an affidavit from his sister describing her observations of his language difficulties, including her belief (formed while observing him at an immigration court hearing) "that he was confused about the meanings of some of the English words." R. at 75. In short, the

---

[1] Atud argues the BIA also relied (erroneously, he says) on its conclusion that there was no reason to question his mental competency. Atud claims the BIA raised the question of mental competency sua sponte, using it as some sort of surrogate for analyzing prejudice or the effectiveness of his former attorney. We believe Atud misinterprets the BIA's decision. Atud asserted two reasons for reopening: (1) ineffective assistance and (2) new evidence supporting his claim of an intellectual disability. As to the latter, he specifically claimed that he attempts to make himself appear more mentally competent than he actually is. It seems clear the BIA was responding to this argument, not confusing the competency standard with the ineffective-assistance standard.

"assertion that [Atud] has a limited understanding of English," R. at 5, was not solely argument of counsel.

It is difficult to tell whether the BIA's conclusion to the contrary was intended as a throwaway remark to be given no real weight in its analysis. Normally "remand is appropriate" when "we can't determine whether the agency necessarily relied on deficient reasons," *Zzyym*, 958 F.3d at 1033. However, we will set this aside momentarily as we consider the rest of the BIA's proffered reasons, specifically, "Our review of the record . . . does not reflect that the respondent was ill prepared for the merits hearing," and "[Atud's] limited understanding of English does not explain the discrepancies between [his] testimony and his supporting affidavits," R. at 5 (footnote omitted).

Atud argues that these two statements are essentially contradictory. In his view, the very fact of the discrepancies between his testimony and his supporting affidavits shows his attorney had not properly prepared him for the merits hearing. "[O]n the day of trial the IJ knew more about the contents of those witness statements [than] Mr. Atud's [former] counsel." Opening Br. at 27. Atud argues that his former attorney entirely failed to understand ahead of time Atud's own story and to cross-check it against the story told in the supporting declarations. In his view, effective counsel would have, among other things, "interviewed him extensively in

9

preparation for trial, and . . . inquired into each and every inconsistency in the record as it existed at that point," "explicitly noted for the IJ the problematic evidentiary value of the non-witness affidavits, withdrawn them if possible, and verified on the record during the direct exam that the Petitioner had neither told the witnesses what to write . . . nor . . . reviewed their statements for accuracy," and "interviewed [him] and worked with him (and possibly other accessible witnesses) to verify and order his memories of his experiences." Reply Br. at 8.

From the government's perspective, however, Atud's "entire argument depends on accepting the assumption he has a credible claim his prior attorney bungled, as opposed to accepting the agency's conclusion that [he] simply does not have a credible claim." Response Br. at 26. The government views Atud's invocation of the ineffective-assistance standard as a cynical ruse to obtain a "blank-slate opportunity to rework a failed claim." *Id.* at 27.

We appreciate the government's concern. We do not endorse any ineffective-assistance claim that, at bottom, amounts to an assertion that a better attorney could have helped the petitioner to construct a more believable story. However, the question before this court is not whether Atud is misusing the ineffective-assistance standard but whether the BIA adequately explained why he did not satisfy that standard.

When the BIA said that "[Atud's] limited understanding of English does not explain the discrepancies between [his] testimony and his supporting affidavits," R. at 5 (footnote omitted), it may have had in mind the same thing the government has in mind, namely, that Atud's (apparent) dishonesty has been exposed and he is simply grasping for a second chance. Or the BIA may have concluded that the supporting affidavits say what they say, and their import cannot be avoided, regardless of whether Atud could have read them ahead of time and prepared to explain the discrepancies. But we do not offer these possibilities as examples of reasoning that would necessarily pass our abuse-of-discretion review. We offer them merely to demonstrate that we cannot be sure what the BIA had in mind in its analysis because it did not explicitly say in the order.

"We cannot perform a meaningful review where the [BIA] does not sufficiently articulate its reasoning." *Mickeviciute v. INS*, 327 F.3d 1159, 1162 (10th Cir. 2003). Also, "[w]e are not at liberty to search the law and the record for reasoning to support the BIA's decision because a court may not uphold an agency action on grounds not relied on by the agency." *Id.* at 1162–63 (internal quotation marks omitted). Our uncertainty about what the BIA really meant when discussing the significance of the inconsistencies, combined with the BIA's error in attributing a factual

assertion to argument of counsel only, convinces us that remand is the best course.

## IV.    CONCLUSION

We grant the petition for review, vacate the BIA's denial of Atud's motion to reopen, and remand for further proceedings consistent with this order and judgment.

Entered for the Court

Richard E.N. Federico
Circuit Judge